TOWNSEND (TENNEY v.). See Case No. 13,832.

## Case No. 14,118.

TOWNSEND v. TODD.

[See Case No. 14,075.]

## Case No. 14,119.

TOWNSEND v. UNITED STATES.

[1 U. S. Law J. 533, b.]

District Court, S. D. New York. 1822.

IMPRISONMENT FOR DEBT DUE THE UNITED STATES —RELEASE—COSTS—POUNDAGE.

When an insolvent debtor to the United States is imprisoned on a ca. sa., and the secretary of the treasury discharges him from imprisonment, under the first section of the law of June 6, 1798 (3 Bior. & D. Laws, c. 66, p. 54 [1 Stat. 562, c. 50]), "on payment of costs," the marshal of the district in which such debtor is imprisoned has a right to charge poundage, as a part of his costs, provided the state laws existing in such district would permit a sheriff to charge poundage on a ca. sa. as a portion of his legal costs.

On a motion for a discharge from imprisonment on a ca. sa. Peter Townsend was indebted to the United States, to the amount of sixty thousand dollars. He was imprisoned on a ca. sa., and petitioned the secretary of the treasury for a discharge from imprisonment, under the act of congress. The discharge was granted, but there was a condition that the debtor should assign over his property to the United States, and pay costs which had arisen in obtaining judgment. A controversy arose as to what was included in the word "costs"; the marshal contending that it embraced poundage, the prisoner conceiving that it did not. The poundage amounted to about eight hundred dollars, and the bill of costs, including it, was duly taxed. The debtor now tendered to the marshal all the costs, excepting the poundage, and demanded his release from imprisonment. This being refused, the counsel for the prisoner appeared in the district court, in which the judgment was recovered, and on reading the proper affidavits, moved his discharge from the custody of the marshal, or rather from the custody of the sheriff, who is substituted for the marshal. This motion was argued by J. Wells and C. G. Haines, for the insolvent debtor, and by T. A. Emmet and J. O. Hoffman, for the marshal. It will be seen that the district judge denied the motion.

VAN NESS, District Judge. By the affidavit and papers in this case, it appears that the defendant, Peter Townsend, is in custody, on a ca. sa. issued in favour of the United States; that the secretary of the treasury, on the 15th of November, 1822, by virtue of the authority vested in him, by the act of the 6th of June, 1798, issued an order to the keeper of the prison, authorizing him to discharge from his custody "the body of the said Peter Townsend, on payment of costs, and on condition that the said Peter Townsend shall assign and convey, to the use of the United States, all his estate, real and personal and mixed, by instrument to be approved by Robert Tillotson, Esq., attorney of the United States for the said district of New York." It appears, further, that the defendant has executed an assign-

ment, agreeably to the condition of the discharge, and has paid the costs of the attorney of the United States, for prosecuting the suit. His counsel now moves, that he be discharged without payment of the fees, claimed by the marshal as poundage on the execution.

In support of this motion, it is contended: 1st. That the order of the secretary is not in conformity to the act; that in its present form, its legal operation must be an unconditional discharge. 2d. That the marshal is, in no case, entitled to fees, in the nature of poundage. And 3d. If he be, that the term "costs" does not include poundage.

It has been contended, first, that the condition inserted in the order to discharge the defendant is unauthorized by the act of the 6th June, 1798, and that the discharge thereby becomes absolute. I cannot yield to such construction of the statute. There are several stages of the proceedings under this act. The secretary of the treasury is, in the first instance, and in the manner prescribed by the act, to be satisfied, that the debtor has brought himself within its provisions, and this being ascertained, he is then authorized "to receive from such debtor, any deed, assignment, or conveyance, of the real or personal estate of such debtor, if any he hath, or any collateral security, to the use of the United States; and upon a compliance by the debtor with such terms and conditions as the said secretary may judge reasonable and proper, under all the circumstances of the case, it shall be lawful for the said secretary to issue his order, under his hand, to the keeper of the prison, directing him to discharge such debtor from his imprisonment under such execution." Under this provision of the statute, it has been urged, that not only the conveyance, or the collateral security directed to be taken, but that any other terms and conditions, which the secretary may judge proper to impose, must be perfected, or carried into full effect, before the discharge can issue; or in other words, that they are conditions precedent, to be performed before the right of the secretary to make the order attaches. This argument, if well founded, would prove too much, for it would then follow, that the discharge in the present case is illegal; for on its very face, it appears, that no deed, assignment, or conveyance, had been executed by the debtor, or any collateral security given, to the use of the United States, at the date of the discharge; and such conveyance, or collateral security, by the language of the statute, are, according to this argument of the defendant's counsel, to precede the discharge. If, therefore, I should adopt the reasoning, and decide that no condition can be inserted in the discharge, I must deny the present motion, and upon the ground, that the discharge is not partially inoperative, but wholly void. I cannot accede to this construction of the act. If it be

established, that the debtor is entitled to the benefit of the provision of the statute, which is the primary inquiry, for all its other provisions are incidental thereto, then, whether the conditions are inserted in, or form a part of, the order, to be performed before it becomes effectual, or whether they are performed by the debtor, before the secretary signs the discharge, the objects of the law are equally promoted in both cases. The former course is most beneficial to the debtor. It must be obvious, that the construction contended for by the defendant's counsel, would necessarily prolong the imprisonment. The debtor is secured a more speedy liberation, by inserting the terms or conditions, such as the secretary shall decide to be just, in the order for the discharge. It can then be carried into prompt and immediate effect.

Secondly. The discharge is directed to the keeper of the prison. It is forwarded to the district attorney, the law officer of the government, and to him is confided its due execution. He is to see that the debtor performs its terms and conditions. In the instance before us, the conveyance required of the debtor is to be approved of by this officer. It is not available to the defendant until its terms and conditions are performed, and then only, and not before, does it acquire validity and effect, or become mandatory on the marshal, or keeper of the prison.

Thirdly. The practical construction of the act, since its passage, in 1798, has been uniform; and the secretary of the treasury, being satisfied of everything required, by the debtor, to enable him to take cognizance of the question of discharge, and the terms on which it is to be granted, these terms have always been inserted, as a condition to the discharge itself, to be carried into effect, under the advice or direction of the attorney of the district. I shall not be the first to overrule this construction of the statute, so long acquiesced in, so salutary to the United States, so beneficial to the debtor, and one evidently best promoting the benign intention and object of the law. I might add that the conditions themselves are to be performed, before the discharge, in contemplation of the law, can be considered as having issued; so that the performance of the conditions, in point of fact, precedes all claims of the debtor to its benefit.

In considering the second point, it will be necessary to examine what fees have been provided by the laws of the United States, for the service of executions. The act of September 24, 1789 [1 Stat. 73], entitled "An act to establish the judicial courts of the United States," provides no fees for the marshal. But on the same day, another act was passed, entitled "An act to regulate process in the courts of the United States." The third section of this act declares, that until further provision shall be made, all the forms of writs and executions, &c., and

rates of fees, except fees to judges, and in suits at common law, shall be the same, in each state respectively, as are now used in the supreme court of the same. This act was continued in force by an act of February 18, 1791 [1 Stat. 191], to May 8, 1792 [1 Stat. 275], the end of the next session of congress.

The act of March 3, 1791 [1 Stat. 216], however, intervened, and is the first act of congress providing specific fees for the officers of the courts of the United States. Besides other fees, it gives the marshal mileage "for serving and returning a writ (not executions) viz. five cents per mile for his necessary travel"; leaving fees on executions under the act of September 29, 1789 [1 Stat. 93], to be regulated by the rates of fees allowed in the supreme courts of the states respectively. This act is likewise limited to the end of the next session of congress, of May 8, 1792. On that day, this act of March 3, 1791, those of February 18, 1791, and of September 29, 1789, were all repealed by this act of May 8, 1792. The act of May 8, 1792, regulates process in the courts of the United States, and provides compensation for the officers of said courts, jurors, and witnesses. These two objects had not before been blended in the same act. The second section declares, that the forms of writs, executions and processes, &c., shall be the same as are now used, &c. The third section declares, that the marshal shall be entitled, for "the service of any writ, warrant, attachment, or process in chancery; on each person named therein, the sum of two dollars, besides fees for travelling, and for levying an execution; and for all other services not enumerated, such fees or compensations as are allowed in the supreme court of the state where the decision shall be rendered."

It is evident, from the phraseology of these acts, that although the words "writ" and "process" may be considered as generic terms, technically, and legally including "executions," yet that congress uniformly used them in their common and popular acceptation. By writs and process meaning mesne, not final process, and designating the latter, at least, ca. sas. and fi. fas. by the term "executions," as in general use. These acts show, further, that fees on executions were never provided by any of them, not through inadvertence, but they were intentionally, expressly, and very wisely, left to be regulated by the laws of the state. Thus the act, that of May 8th, 1792, declares, that "for the service of any writ, warrant, attachment, or process in chancery, the marshal shall be entitled to two dollars." "For levying an execution, and for all other services not enumerated, such fees or compensations, as are allowed in the supreme court of the state where the service shall be rendered." Showing clearly, that by the terms writ, warrant, attachment, or process, executions were not intended to be embraced, or provided for.

The next act giving fees to the officers of the courts were those of March 1, 1793 [1 Stat. 332], continued by that of February 25, 1795 [1 Stat. 419], and again by that of March 31, 1796 [1 Stat. 451]. They related, however, exclusively to admiralty fees, and have expired. That of March 1, 1793, gives the custody fee of $1.50, although the act has expired: the compensation for this service was, by the act of 1792, referred to the discretion of the courts. They have pursued the precedents furnished by that act, and continued it as reasonable. But it is contended, that the act of February 28, 1799 [1 Stat. 624], which repeals the third section of the act of May 8, 1792, differs from it in its language and provisions, and has ordained a fee for the service of executions. Let us examine it, and see wherein the difference consists. The first section is intended as a substitute for the third section of May 8, 1792. There are three clauses in these sections, respectively, which relate to corresponding services; I will compare them with each other. The first clause to which I refer, in the act of May, 1792, is in these words: "For the service of any writ, warrant, attachment, or process in chancery, &c., two dollars." The corresponding clause in the act of 1799, is thus: "For the service of any writ, warrant, attachment, or process, issuing out of any courts of the United States." It is admitted, in consequence of a subsequent provision, that congress did not mean to embrace executions, by these words in the act of 1792; and why it should be supposed they meant to include them in those of the act of 1799, is to me utterly inexplicable. The only difference in the enumeration is "process in chancery," in the first, and, in the other, "process issuing out of any courts of the United States." The one gives the fee of two dollars for the service of process issuing from one of the courts of the United States, and the other the same fee, for the same process, issuing from them all. The writs and process intended, are the same; the fee is the same; which furnishes evidence, that the two clauses refer to the same service. No reason whatever can be assigned why, in the two acts, the same words should be used in a different sense. It would, if it were so, be proof of a want of care and intelligence, which is not to be presumed.

It is further contended, that the second clause of the first section of the act of 1799 gives fees for levying a fi. fa. If this presumption were well founded, it would afford some support to the construction attempted to be given to the first clause, inasmuch as it would go to show, that fees on executions, were not entirely left to be regulated by the laws of the state. But in my judgment, this part of the act is too plain to admit of either doubt or argument. It is conceded that the corresponding clause of the act of 1792 relates to sales in the admiralty. It is in these words: "For each bail bond, fifty cents; for

selling goods, or vessel condemned, and for receiving and paying the money, three per cent." Plain and explicit as this provision is, it is certainly not more so than the phraseology of the act of 1799, which is as follows: "For every proclamation in the admiralty, thirty cents; for sales of vessels, or other property, and for receiving and paying the money," &c. It seems to me impossible to resist the conviction, that both acts here refer to sales in the admiralty. The only difference consists in a judicious modification of the latter, allowing the marshal a percentage upon all property sold, whether under decrees of condemnation, or interlocutory orders because the service and responsibility is precisely the same. The first allowed the compensation for "selling goods and vessels condemned"; the other, for "sales of vessels or other property," whether condemned or not. This is indubitably the true meaning of the act, and no ingenuity can assign a rational reason for the construction given to it by the defendant, or a plausible argument to show, that "other property" means property sold by the common law process of fieri facias. It is well known, that a very great portion of the sales in the admiralty are of property other than vessels, and of property not condemned. No reason whatever exists why the per centage should not be allowed on property sold in virtue of an interlocutory order, as well as on property condemned, the service and responsibility being the same. The word "condemned" was therefore very properly omitted in the last act. There is inconsistency, too, in the supposition, as connected with the argument upon the first clause. A fi. fa. is as much a writ or process, as a ca. sa.; and if the terms "writ or process" include the one, they necessarily must the other.

But it is said that executions cannot be considered as embraced in the first clause of the third section of the act of 1792, because by the third, the compensation for serving them is, in terms, left to be regulated by the laws of the several states. And so it most assuredly is, by the act of 1799, if serving, or levying an execution, is a service; and that it is, will not, I presume, be denied. The first act after enumerating and ascertaining the marshal's compensation for serving a writ, process, &c., and various other services, declares, that he shall receive, "for levying an execution, and all other services not enumerated, such fees or compensation, as are allowed in the supreme court of the state, wherein the services shall be rendered." The act of 1799, after enumerating the same and similar services, and annexing similar fees, concludes thus: "For all other services not enumerated, except," &c., "such fees and compensations as are allowed in the supreme court of the state," &c. It is too obvious, I think, to require an argument to prove, that if the levying an execution be not enumerated, it passes under the general reference to the state laws, as well by the words of

this act, as by those of the former. If it be admitted, as I conceive has been amply shown, that it is not enumerated, or intended to be, then it would be futile to place the words "for levying an execution" before "all other services." They would be mere surplusage, tautological, and useless.

I shall dismiss this branch of the argument by observing, that I never have entertained the least doubt as to the construction of the first section of the act of 1799, and do not now. It is perfectly clear to my mind, that fees for serving or levying executions, were very properly intended by congress, to be regulated by the laws of the different states, and that the marshals, in that respect, stand on the same footing with the sheriffs. It is every way proper that it should be so. A variety of considerations, connected with the feelings, the prejudices, and local habits of the people, render it expedient. The same fees for the same services, in the courts of the two governments can generate no invidious comparisons, nor disturb the harmonious reverence due to both.

It has, lastly, been contended, that the poundage, or fees of the marshal for serving an execution, are not embraced in the term "costs," used in the discharge, and that it can only mean the costs which occurred prior to issuing the execution. It is not to be denied, that if I am correct in my preceding interpretation of the laws of the United States regulating the fees of the marshal, he is entitled to the same fees for serving an execution, either from the plaintiff or defendant, as the sheriffs of this state are entitled to claim. And if, in this case, the secretary of the treasury had directed the discharge, without inserting the condition, "on payment of costs," I have no hesitation in saying, that the United States are to be considered responsible for the marshal's fees, in the same manner, and to the same extent, as any other plaintiff in a suit. In such case, it would be the duty of the marshal to obey the mandate, and to look to the government for his compensation. It is on this principle, that the supreme court of this state have decided that when a plaintiff in a suit countermands an execution served, or directs the discharge of a defendant arrested, on a ca. sa., without directing the costs to be paid, the plaintiff, and even the plaintiff's attorney, is liable for the poundage. Suppose, in such a case, the plaintiff had countermanded the execution, and ordered the discharge of the defendant on payment of costs, and the sheriff had obeyed the order of the plaintiff, without exacting his costs of the defendant, no person can doubt that he had thereby waived all liability on the part of the plaintiff. The discharge in this case recites the judgment, and the execution, and the defendant is to be discharged from the latter on the payment of "costs." He is never discharged from the judgment; because his future property continues liable. The lien on it still remains.

He is to pay costs of what? Not simply of the judgment, but necessarily also of the execution. Confining myself, therefore, to the very language of the discharge, it would be to narrow its fair interpretation and meaning, to decide that the costs, only to the time of signing the judgment, are to be paid by the defendant; thus leaving the United States to satisfy the costs of the execution. There is nothing in the law, by which I am bound to affix to the term "costs," so restricted a sense.

I am aware, that in England the poundage of a sheriff is paid by the plaintiff, except where there is judgment for a penalty, and then it is permitted, to levy in addition to the sum actually due. This very exception establishes, that it is a just charge against a defendant. The other cases, when the plaintiff is liable for the sheriff's fees, or the poundage, on the execution, proceed on the form of the judgment, and on technical rules, which have been a subject of complaint in that country. The distinction I have suggested is marked out by the cases reported in 1 East, 403, and 3 Bos. & P. 362. In the latter case especially, poundage is called "costs of the execution," as distinguished from the costs of the judgment, but clearly including both within the general appellation of costs. By whom to be paid, was the question to be decided; but whether it be paid by plaintiff or defendant, poundage was costs; or, in other words, the legal fees of the officers and ministers of the law. Whatever may be the law of England, I am not bound to declare. The laws of this state, and the decision of its supreme court, remove all doubt on the question, that fees, in the nature of poundage, are allowed by the laws of this state; and the practice of the supreme court has been too long and too well established, to admit of a doubt. The poundage of a sheriff, or his fees for serving an execution, are here regulated by statute, and are levied on the property of the defendant, or paid by him on an execution against the body, in the same manner, and in all cases, as the amount of the original recovery. And this poundage, by a statute of this state, shall be taxed on the application of the defendant; thereby showing his liability for the same. It was admitted on the argument, that it had always been the practice in this state, to indorse on the execution, that, besides the amount therein specified, the sheriff was to levy his poundage. This practice is certainly in conformity to the law; for the same statute which fixes the costs, anterior to the judgment, also defines and establishes those which may arise, and be demanded, subsequent thereto.

On a fi. fa. the sheriff is entitled, the moment he levies, to poundage on the amount that may be realized from the property seized, or upon a compromise between the parties. This doctrine is established in the case of Hildreth v. Ellice, 1 Caines, 192, and is supported by the case of Alchin v. Wells, 5 Term. R. 470. This case was decided in 1803, and its authority has never been questioned or disturbed. The practice has ever since been universal and uniform. In the case of a ca. sa. the sheriff, by the decision of the supreme court of this state, is entitled to his poundage, upon taking of the body in execution. It is then his responsibility attaches, and it is then his right to compensation is consummated. It does not depend upon the amount which may ultimately be recovered, and he may resort for his fees to the attorney who issued the execution. The law has been thus deliberately settled, in the case of Adams v. Hopkins, 5 Johns. 252, and Scott v. Shaw, 13 Johns. 378. I concur with these decisions, and think they have settled the law correctly. Even if I did not; still they must govern the present case; for the decisions of the supreme court of this state must be the rule of my decision in a question of this sort.

Upon the whole, I am clearly of opinion, that the marshal is entitled to poundage on the execution, to be taxed, and which, by the terms of the discharge, is to be paid by the defendant. Until the payment thereof, the defendant is not entitled to be discharged from custody under the execution, and I shall direct a rule accordingly.